-FILED-
JUL 20 2026
At ______ M
Chanda J. Berta, Clerk
U.S. DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

By leonard a.mckenzie III
Without Prejudice
VOID WHERE PROHIBITED BY LAW
In Care of postal service address:
[802 E.Bowman St South Bend, Indiana]
USA without USDC
Zip exempt, nut near 46628

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT COURT OF INDIANA
# SOUTH BEND DIVISION

**leonard a mckenzie iii, a man (unrepresented)** )
)
*Complainant* )
)
)
v )

**CAUSE NO: [3:25-CV-304 DRL-SJF]**

**Hon. Damon R. Leichty**
**Magistrate Judge Scott J. Frankel**

**DAKOTA CREMEANS** individually and in his )
official capacity as a South Bend Police Officer **(Badge #4336)**

**MICHAEL INGLES** individually and in his )
official capacity as a South Bend Police Officer **(Badge #379)**

**ZACHARY OVERTON** individually and in his )
official capacity as a South Bend Police Officer **(Badge #2292)**

**CITY OF SOUTH BEND**, an Indiana municipality

*Defendants*

---

## MOTION FOR SANCTIONS, TO COMPEL PRODUCTION OF MISSING BWC FOOTAGE, FOR ADVERSE INFERENCE, AND FOR REFERRAL FOR DISCIPLINARY ACTION BASED ON NEWLY DISCOVERED EVIDENCE OF FRAUD, SPOLIATION, DEFAMATION, OBSTRUCTION, AND DECEPTIVE PRACTICES BY DEFENSE COUNSEL

COMES NOW Complainant leonard antowyne mcKenzie III, (unrepresented), and files this Emergency Motion based on newly discovered evidence received from Defendants on July 6, 2026.

This evidence conclusively demonstrates:

I. The BWC and MVR footage proves the warrantless entry onto curtilage, the illegal seizure, and the retaliatory motive of Defendants;

II. The footage has been edited and altered;

III. Defendants muted their body cameras during critical conversations to conceal their misconduct;

IV. Officer Zachary Overton's BWC footage has been withheld by defendants;

V. The preservation notices issued June 6, 2023 were violated; and insurance or bond information as required by law on all parties has not been produced

VI. The September 30, 2024 APRA response was fraudulent; by Senior Assistant City Attorney Danielle Weiss

VII. Defense counsel Stephanie L. Nemeth has engaged in deliberate deception, obstruction, and fraud upon the Court.

I. NEWLY DISCOVERED EVIDENCE FROM THE BWC AND MVR FOOTAGE

1. On July 6, 2026, Complainant received via email from Attorney Stephanie L. Nemeth the following files:
   a. Ptlm_Cremeans_BC_Impound.mp4 (Officer Dakota Cremeans body camera footage);
   b. Lt_Ingle_BC_Impound.mp4 (Lieutenant Michael Ingles body camera footage);
   c. Pfc_Overton_MVR_Impound.mp4 (Officer Zachary Overton mobile video recorder footage);
   d. Ptlm_Cremeans_MVR_Impound.mp4 (Officer Dakota Cremeans mobile video recorder footage);
   e. Chain of Custody Logs (RFP 3).

2. Conspicuously absent is Zachary Overton's body-worn camera footage. Defendants have not produced any BWC footage from Overton, despite his presence at the scene and his active participation in the events.

3. Dakota Cremeans' BWC footage (Ptlm_Cremeans_BC_Impound.mp4) does not show where he was patrolling from, contrary to his report stating he was "patrolling the area." The footage begins with Cremeans already sitting outside Complainant's domain with no lights activated, exiting his patrol car and approaching the Land Rover without any legitimate purpose.

4. Cremeans exiting his patrol car at **14:31:04 EST (Exhibit 1)** walking up to the Land Rover at **14:31:09 EST (Exhibit 2)**, wiping snow off the windshield to view the VIN at **14:31:18 EST (Exhibit 3)**, scratching snow off the truck with his left hand at **14:31:22 EST (Exhibit 4)**, and pulling out his personal phone to take a picture of the VIN at **14:31:44 EST (Exhibit 5)**.

5. Cremeans then walks back to his patrol car at **14:31:52 EST (Exhibits 6)**, sits in his car on his computer at **14:34:08 EST (Exhibit 7)** radios "71-213 put me out at 802 E. Bowman Street on follow up please". This is after he had already entered the curtilage, inspected the vehicle, and taken photographs of the VIN.

6. Cremeans exits his patrol car at **14:34:28 EST (Exhibits 8)**, walks up to Complainant's back door at **14:34:48 EST (Exhibits 9)**, and knocks eight times. He then steps back at **14:34:56 EST (Exhibits 10)**, walks back up at **14:35:35 EST (Exhibits 11)**, and knocks six more times. At **14:35:42 EST (Exhibits 12)**, he steps back and waits. He then walks down the steps and back to the Land Rover at **14:36:16 EST (Exhibits 13)**, looking through the window at **14:36:21 EST (Exhibits 14)**.

7. Cremeans walks to the front of the domain to view the address at **14:36:32 EST (Exhibits 15)**, turns around, walks back to his patrol car and gets inside at **14:36:50 EST (Exhibit 16)**. He then radios dispatch at **14:36:57 EST (Exhibits 17)**: "Can you copy a plate for me please?" This is the first time he requests the plate to be run, despite having already inspected the vehicle,

removed snow from the vehicle, taken the VIN, and knocked on the door.

8. At **14:42:22 (Exhibit 18)** Cremeans picks up his cell begins texting then makes a phone call and states: "Hey dumb question because I'm getting confused here... so this vehicle parked on the side of the road (false statement) obviously it has a stolen plate on it, the vehicle is NOT stolen itself. Complainant lives here at this address and all this stuff. So I was planning on towing it. So I know the other report I have to do a cancellation. But do I have to do another number? For the tow? Or can I put it all into the original....? Yea... Yea, its really weird because the Complaint is from this address and then it gives the vehicle that's stolen is the Land Rover. Her Boyfriend. Its this Land Rover and it has it on it. So. My guess is it got stolen from her residence and then she got it back or just left it on his vehicle so. But ok yea. I just got confused with the numbers and having to pull new ones so I'm just gonna do a cancellation and put this vehicle. This vehicle's already in, but it'll be put in again as impounded so. Yup! No I think so to I'll yank the thing off They didn't answer the door, somebody came to the window but they didn't answer the door." So I'm like alright. **(Dakota Cremeans deliberately lies on his body cam saying "This vehicle's already in, but it'll be put in again as impounded so." got off the call and radioed a 71-213 to get a record of tow started for the very first time. Dakota Cremeans then openly admits to 4th Amendment Violation "They didn't answer the door, somebody came to the window but they didn't answer the door." So I'm like alright. Dakota Cremeans should have made a new report for his actions the same way he made a new request for tow. As these events on Jan. 28, 2023 conducted by him unlawfully in violation of due process of law has nothing to with any other existing report made prior to Jan. 28, 2023. The cancellation of any pre-existing report and placing Jan. 28,2023's events to substitute it, two entirely separate events is fraud within it's self. Thats's exactly what the defendant's have allowed and conducted back in 2023.)**

9. This call demonstrates Cremeans lack of training, he knew the vehicle was not stolen (he admits "the vehicle is NOT stolen itself"), yet he proceeded with the impound anyway. **(Cremeans makes a call, then verbally admits to a 4th Amendment violation to an (unidentified) party. This was not a mere mistake, but a act to intentionally deprive complainant of his constitutional rights.)**

10. At **15:02:29 EST (Exhibits 19)**, Complainant appears in his porch window and asks: "Whats the problem? Why are you here?" Cremeans responds: "the plate on the vehicle is stolen and it's not registered." Complainant states: "its my plate and its not stolen and it belongs to me." Cremeans replies: "It doesn't though." Complainant asks: "well who does it belongs to?" Cremeans replies: "It doesn't belong to you man." Complainant: "yes it does." Cremeans: "I just read it, it doesn't belong to you and it's stolen." Complainant: "NO it's not." Cremeans: "yes it is." At this moment Dakota Cremeans is asserting his pre-existing knowledge of Complainant.

11. Complainant tells Cremeans: "its my truck and I bought it from the auction." Cremeans admits: "I get that but the truck is not registered, the plates stolen, and it doesn't belong to you." Cremeans then states: "yea the car is gonna be taken." Complainant: "No it's not." Cremeans: "OK." Complainant: "NO IT'S NOT."

12. At **15:03:15 EST (Exhibits 20)**, Cremeans dispatches: "71-213 Can I get another unit non signal 10 got the owner of the vehicle saying I'm not gonna take it." **(Dakota Cremeans acknowledges that Complainant is the owner of the 2006 Land Rover over dispatch.)**

13. Complainant tells Cremeans: "I have the paper work showing the truck belongs to me and I purchased it." Cremeans responds: "ok car doesn't belong you, plates stolen, the plate doesn't belong to you man."

14. At **15:06:15 EST (Exhibits 21),** Complainant tells Cremeans: "Don't touch my truck. I don't know what you are doing, but you've got no business to be here. Nobody even called you here. What are you even doing here? What are you doing here right now?" Cremeans does not answer.

15. Zachary Overton arrives at **15:07:16 EST (Exhibit 22**). At **15:08:13 EST (Exhibit 23),** Overton asks Cremeans: "You know what's funny? Did you get called here or where you just driving by?" Cremeans responds: "NO. I was just driving by." Overton states: "oh yea that's funny because this car has probably been sitting here for... ever."

16. Cremeans tells Overton: "Well I know. Last week, I think it was LFD or whatever, they said there was a Land Rover that was stolen southwest." Cremeans continues: "So when I was driving by, I'm like Land Rover! And I knew the plate was expired or whatever. So let me flip around and run it. I run it and it comes back that the plates stolen. I'm like oh. Then I scrape off the vin and I'm like well the vehicles not stolen the vehicle goes back to another lady." **(Cremeans admits his sole basis for his conduct was an expired sticker everything else is NULL & VOID fruit from a poisonous tree.)**

17. At **15:09:39 EST (Exhibit 24),** Cremeans tells Overton: "Before I even called the Tow I knocked on the door because I wanted to talk to him because I was like, the Complainant's here and if I talk to the complainant and she's like yea I got my plate back just haven't taken it out. I'm like well then I'll be able to work with ya but." **(This willful misconduct by Dakota Cremeans and his reckless disregard for probable consequences forces him to again admit on body cam to the 4th Amendment Violation to Zachary Overton.)**

18. At **15:09:55 EST (Exhibit 25),** Overton responds: "oh well. Now he's gotta go register the vehicle if it's even his." Cremeans: "I know, that's was my thing when I read the vin it comes back to a female out of like Zo something." Overton: "Zionsville." Cremeans: "yes." **(Both officers acknowledge the vin is valid and registered and no need to tow.)**

19. At **15:12:37 EST (Exhibit 26),** Complainant flashes his ownership documents from the porch window and states: "I have the paper work right here!" Cremeans says the supervisor is coming.

20. At **15:12:45 EST (Exhibit 27),** Cremeans tells Overton: "yea but how long has he had the paper work tho like I said." Overton: "he just found it." Cremeans: "Yea but how long has he ya know. I get it ya know, but that still doesn't mean that you can put random stolen plates on your vehicle." Overton: "oh yea I'm clear 100 percent." Cremeans: "ok." Overton: "I'm with you ALL THE WAY." Cremeans: "because he's saying that he owns the plate to. Like even. I didn't say this but even if you own the plate, the plates expired ya know. But." Overton: "expired. stolen." Cremeans: "ya don't own the plate." **(Both men again validate first the "expire tag" was the sole justification for this malice conduct.)**

21. Both men acknowledged on video that the expired tag was the sole basis of the illegal search and seizure. An expired tag on a parked vehicle in complainant's driveway is not a crime. Dakota Cremeans had no business to be on the property or even to approach the Land Rover to begin with. **(Everything after is NULL & VOID on it's face. Dakota Cremeans police report even said he noticed an expired license plate nothing more. The altered and redacted footage that has now been submitted by defendants, that has been intentionally withheld for years unequivocally corroborates one's claim.)**

22. Lt. Michael Ingles arrives at **15:19:11 EST (Exhibit 28).** Cremeans bends down into Ingles' patrol car and states: "Hello Sir. So. I just ran the plate cause I got a Land Rover stolen last week. So I

run the plate on the vehicle the plate comes back stolen, to a lady named like townskin or whatever. So then the vin on the vehicle comes back to a lady down in Zion Ville? Zionsville. So none of that. I read the original report, the original report is the lady that reported it stolen. She reported it stolen from here because she lives here. It's baby daddy Leonard. Something, took it in his Land Rover back in 2021. That was the original report." Ingles: "but it's not the lady from Zionsville?" Cremeans: "NO." Ingles: "OK." Cremeans: "No that's completely different that owns this car." Ingles: "OK." **(Both officers acknowledge the truck is not stolen and registered. Dakota Cremeans admits the plate belongs to 802 E. Bowman St. This conversation further shows, this mention of an original report had nothing to do with Dakota Cremean's actions or his presence on the property that day.)**

23. Lt_Ingles_BC_Impound.mp4 At **15:20:07 EST (Exhibit 29)**, Ingles signals Cremeans to mute his body camera microphone. At **15:20:08 EST (Exhibit 30)**, Ingles' microphone is muted. At **15:20:11 EST (Exhibits 31)**, Cremeans' microphone is muted. **(This intentional muting occurred during critical conversations about the legality of the seizure and demonstrates consciousness of guilt by Mike Ingles and Dakota Cremeans.)**

24. Ingles exits his patrol car and approaches Complainant porch window Lt_Ingles_BC_Impound.mp4 at **15:21:22 EST (Exhibit 32).** Complainant states: "I dont know whats up, I came outside to him ripping plates off my car. He's saying that the plates are stolen and then he's saying that the truck don't belong to me. I got paperwork showing that I bought this truck from the auto auction, the salvage yard."

25. Ingles states: "well it has stolen plates on it so." Complainant: "but the plates are not stolen sir." Ingles: "well their stolen in the computer." Complainant: "Who do they come back to if they are stolen? Let me see a name. What name?" Ingles turns away and asks Cremeans: "Who's it registered to?" Cremeans: "townsten last name townsten."

26. Ingles then walks with Cremeans back to his squad car. They verify the plates belong to Macayla Townsend, who lives at 802 E. Bowman Street (same address). They verify the truck is registered to Maurey Green and not stolen again.

27. Ingles asks Cremeans: "is this Leonard Mckenzie here?" He then asks Complainant: "Are u Leonard? Are u Leonard? Are you Leonard? Are you Leonard? Are you Leonard sir?" Complainant replies: "No i'm not." Ingles: "ok." Cremeans states: "that's Leonard." Cremeans again asserted knowledge of Complainant.

28. At **15:23:51 EST (Exhibit 33)**, Ingles advises the tow truck driver: "go ahead and get started on impounding the Land Rover from the property."

29. Ingles bends down to look at Cremeans' computer screen. The screen displays Complainant's face with other information. Ingles asks: "that's him isn't it?" Cremeans: "Yea." Cremeans continuously upholds his knowledge of complainant but reported a "an unknown m/b" which is false reporting.

30. Ingles approaches Complainant and asks: "do you have some paperwork on the car and some ID?" Complainant asks: "why is you telling him (the tow truck guy) to go ahead and take my car?" Ingles: "because that's what we are doing do you have some ID?" Complainant: "for what? Why are taking my car?" Ingles: "I don't know who's car it is."

31. Complainant flashes his paperwork and states: "it's my car." Ingles grabs the documents at **15:24:19 EST (Exhibit 34)** and walks off towards Cremeans.

32. At **15:24:30 EST (Exhibit 35)**, Ingles advises Cremeans: "watch out for this dude. "He'll come out shooting." **(This defamatory statement reveals Ingles' bias and dangerous intent, making assumptions about Complainant that do not match his character. Defamation is a false statement that harms your reputation, his statement was false and was defamatory. By instructing another officer to "be on guard," that was their long before Mike Ingles arrived. Had already came in contact with complainant and was not in a fear of danger. Mike Ingles wanted to create a self-fulfilling prophecy with intentions of increasing the risk that any normal or nervous movement from Complainant could be misrepresented as a threat. Mike Ingles publicly stated to another public servant officer that Complainant was a violent threat, without any basis on Jan 28, 2023. Complainant called for a supervisor to come out the scene for help and got the opposite of help. Mike Ingles, Dakota Cremeans, and Zachary Overton have to shown their discrimination against a dark skinned being such as myself, all three guns and badges needs to be removed the men immediately. These actions from Mike Ingles where acts of discrimination. To accept documentation he asked for on the scene from Complainant. Then turn around and instruct a prepped escalation of force to another public servant that could have cause serious bodily injury is violation of the South Bend Police Department Policy Manual Policy 300 Use of Force LETB Statewide Policy. As well as violation of the public trust and his oath of office he sworn to uphold. This is exactly what people in the community especially of my tone do not need to deal with from white men who are bias, dressed as a public servants pretending to protect and serve.)**

II. DEFENDANTS HAVE EDITED AND ALTERED THE BWC FOOTAGE

33. The BWC footage provided by Defendants has been edited and altered. The footage does not show where Cremeans was patrolling from, contrary to his report claiming he was "patrolling the area." And noticed an expired license plate not a stolen license plate.

34. The footage begins with Cremeans already sitting outside Complainant's domain, with no lights activated, already having taken actions that constitute a warrantless entry onto curtilage.

35. The muting of microphones at critical moments constitutes editing and alteration of evidence. Both Ingles and Cremeans intentionally muted their microphones during conversations about the legality of the seizure on 1/28/2023 at 802 E. Bowman Street.

36. Stephanie Nemeth has falsely represented that the footage is unedited. This is a deliberate misrepresentation to the Court.

III. OFFICER ZACHARY OVERTON'S BWC FOOTAGE HAS BEEN WITHHELD'

37. Defendants have produced only MVR footage for Overton. No BWC footage for Overton has been produced.

38. Overton was present at the scene, participated in conversations, and actively endorsed Cremeans' actions, stating: **"I'M WITH YOU ALL THE WAY."**

39. Overton's BWC footage would show his observations, his failure to intervene, and his knowledge of the illegality of the seizure.

40. The withholding of Overton's BWC footage constitutes spoliation and obstruction of justice.

IV. THE CHAIN OF CUSTODY LOGS DEMONSTRATE THE FOOTAGE WAS ACCESSED AND ALTERED

41. The Chain of Custody Logs (RFP 3) demonstrate multiple accesses to the footage by various individuals, including:

a. David Herron - January 30, 2023 (media flag added, media info viewed, authoring job submitted and exported multiple times);

b. Sarah Curl-Larson - May 17, 2023 (on demand request, authoring job submitted, MP4 authoring job complete with MD5Hash);

c. Aaron Knepper - July 6, 2023 (classification added - "Pending Litigation");

d. Danielle Weiss - May 17, 2024 (authoring job submitted for redaction, APRA, export job deleted);

e. Dakota Cremeans - multiple accesses in 2025 and 2026;

f. Michael Ingles - multiple accesses in 2025 and 2026;

g. Kylie Connell - June 10, 2025 (authoring job submitted for redaction, litigation, export job complete with MD5Hash).

42. The multiple exports, redactions, and deletions demonstrate that the footage was altered. The deletion of the export job by Danielle Weiss on May 17, 2024 is particularly concerning.

43. The Chain of Custody Log for Cremeans' ICC footage shows Sarah Curl-Larson accessed the footage on May 17, 2023, and completed an MP4 Authoring Job with MD5Hash: 40C194131BA9C96CBB1F9E4D8985213D. Kylie Connell accessed the footage on June 10, 2025, and completed an MP4 Authoring Job with MD5Hash: CC7C1CBD09A0009B57669B78FC1E9BCF. **(These are different MD5 hashes, which confirms the footage was altered between May 17, 2023 and June 10, 2025.) (Exhibit 36) (1-5)**

44. The Chain of Custody Log for Ingles' BWC footage shows Sarah Curl-Larson accessed the footage on August 10, 2023, and completed an MP4 Authoring Job. Kylie Connell accessed the footage on June 10, 2025, and completed an MP4 Authoring Job with MD5Hash: D360361A199662D73DBC4AD4F2B145E9. **(The footage was altered.) (Exhibit 37) (1-5)**

45. The Chain of Custody Log for Cremeans' MVR footage shows multiple exports by David Herron in January and February 2023, Danielle Weiss in May 2024 (redaction), and Kylie Connell in June 2025 (redaction). The footage was altered multiple times. **(The footage was being altered while complainant made numerous amounts of requests for it and was denied entirely.) (Exhibit 38) (1-4)**

V. THE PRESERVATION NOTICES ARE INCORRECT AND WERE VIOLATED

46. On June 6, 2023, the City of South Bend Department of Law issued Preservation Notices to:
a. Scott Ruszkowski, Chief of Police; **(VIOLATED) (Exhibit 39) (1-2)**
b. Joe Leszczynski, Division Chief; **(VIOLATED) (Exhibit 40) (1-2)**
c. Captain David Herron; **(VIOLATED) (Exhibit 41) (1-2)**
d. Lieutenant Mike Ingle; **(VIOLATED) (Exhibit 42) (1-2)**

e. Sergeant Daniel Demler; **(VIOLATED)(Exhibit 43) (1-2)**
f. Officer Dakota Cremeans; **(VIOILATED)(Exhibit 44) (1-2)**
g. Officer Zackary Overton; **(VIOLATED)(Exhibit 45) (1-2)**
h. Sherri Wildes, Executive Assistant to the Chief's Office. **(VIOLATED)(Exhibit 46) (1-2)**

47. The Preservation Notices explicitly stated: "It is critically important that you retain and preserve all potentially relevant information (e-mails, metadata, photographs, body cam footage, motor-vehicle footage, police reports, etc.) whether hard copy, electronic or otherwise, wherever located, and that you take no action to destroy it. It is critical that you do not delete, over-write, or otherwise alter or destroy any document or file (in print or electronic form) that may contain potentially relevant information."

48. The Preservation Notices further stated: "The City's normal record retention policies relating to the January 28, 2023 Incident will be suspended until further notice." These Notices where **VIOLATED** and are in error. No events happened on Jan 28, 2023 on the intersection of Wayne and Lafeyette, this matter happened at 802 E. Bowman Street while Complainant was asleep. The events from the intersection of Wayne and Lafayette involved a unlawful detention by Joseph Galea because Complainant was big in size. Then right after an illegal search and seizure was conducted by Hunter Miller on my vehicle, ex patrolman of the South Bend Police Department in 2017. He is now a officer at the Michigan City Police Department, which is still being challenged in the St. Joseph County Superior Court today in 2026.

49. Each recipient signed the Preservation Notice, acknowledging receipt and understanding of the preservation obligations.

50. Despite these Preservation Notices, the City:
a. Destroyed or allowed the destruction of the original BWC and MVR footage;
b. Altered the footage through multiple redactions, exports, and edits;
c. Failed to preserve the unedited, original footage;
d. Failed to preserve Zachary Overton's BWC footage.

51. The destruction and alteration of evidence after the issuance of Preservation Notices constitutes spoliation and fraud upon the Court by all individuals listed. **Title 18 U.S.C 241** is a federal law making it a felony for two or more people to conspire to injure, oppress, threaten, or intimidate anyone in the United States in their free exercise or enjoyment of any constitutional or federal right. **Title 18 U.S.C 242** Deprivation of rights occurs when an authority figure willfully takes away your constitutional or legal rights. **(As all individuals acted under color of law using a government title, badge, or power to break the rules. All individuals Stephanie Nemeth, Senior Assistant City Attorney Danielle Weiss, Scott Ruszkowski, Chief of Police; Joe Leszczynski, Division Chief; Captain David Herron; Lieutenant Mike Ingle; Sergeant Daniel Demler; Officer Dakota Cremeans; Officer Zackary Overton; Sherri Wildes, Executive Assistant to the Chief's Office acting or pretending to act in an official capacity to abuse power. All individuals have violated Title 18 241 & 242.)**

VI. THE SEPTEMBER 30, 2024 APRA RESPONSE WAS FRAUDULENT

52. On September 30, 2024, Senior Assistant City Attorney Danielle Weiss responded to Complainant's Public Records Request AR24-1429 **(Exhibit 47)** that was filed August 21, 2024 stating: "Due to the record retention schedule the City follows in accordance with Ind. Code § 5-15, it does not have any responsive records for dash cam or body worn camera footage for either request, as such footage is no longer retained, and therefore, these records no longer exist."

53. Complainant's APRA request explicitly stated: "Date of Incident: 01-28-2023. Dashcam Footage. Body Worn Camera Footage. Photographs. 911 Calls/Audio. Public servants on the scene present at 802 E. Bowman St, Dakota Cremens (2336) Mike Ingles (379), Zachery Overton (2292)."

54. The AR24-1429 **(Exhibit 47)** request had absolutely nothing to do with any incident on February 11, 2021 this is another amongst many attempts by Stephanie Nemeth to lie and deceive this court. Further creating false narratives and blatantly filing deliberate misrepresentations to this court should be condemned immediately. There is no mention of any 2021 incident on this request what so ever.

55. Attorney Nemeth's July 7, 2026 Defendant's Response states: "The statement referenced by Plaintiff in the September 30, 2024 APRA response resulted from a misunderstanding regarding the incident for which records were being requested. At the time of the APRA request, South Bend Police Department personnel understood Plaintiff's request to pertain to Case No. 21-1765, an incident that occurred on February 11, 2021." **This is a lie! (Exhibit 48) (1-5)**

56. This explanation again is a deliberate lie from Stephanie Nemeth to cover up misconduct and the illegal search and seizure conducted by the defendants. Complainant never requested records pertaining to any incident involving February 11, 2021. The APRA request submitted August 21, 2024 **(Exhibit 47)** is clear and unambiguous: January 28, 2023. In fact the City has been on notice of potential litigation since the very first APRA request that was filed on this matter May 3, 2023 and **(Exhibit 49)** AR23-739 in response. All agents have been on notice every since reply response from Traveler's Bond & Specialty Insurance dated June 28, 2023 **(Exhibit 50)**. Every since July 10, 2023 when a City of SouthBend Liability Claim Form was submitted to the City of South Bend's Law Department and received July 12, 2023 **(Exhibit 51)**. This further proves Stephanie Nemeth is lying, they knew exactly what they where doing as the chain of custody logs shows this. The attempts to disassemble this undeniable fact is signs of either incompetence or pure corruption conducted by Stephanie Nemeth and allegedly South Bend Police Personnel. It's determined that Stephanie Nemeth is using any tactic she can to mislead and create her own narrative. **(Dakota Cremean's presence on the property was not due to a stolen plate nor a stolen plate report from Feb 11, 2021. Dakota Cremean's was retaliating against Complainant for his first amendment protected activities. As a active appeal case in the Indiana Court of Appeals filed 12/21/22 challenging a prior conviction involving other South Bend Police officers was still pending. This conduct by the Defendants hindered Complainant from thoroughly being able to orchestrate a proper defense on his appeal freely in 2023. This should also go under review as it is Violation of Due Process of Law. Cremeans also had prior knowledge of an allegedly stolen Range Rover that was reported stolen with LFD as he stated in the altered footage. Then he made an assumption that Complainant's property in the driveway was the allegedly reported stolen Range Rover he was looking for. Dakota Cremeans performed an illegal search and illegal trespass way before he allegedly encountered a stolen plate and the footage shows exactly that. This 2021 scheme by Stephanie Nemeth that she is eagerly trying to incorporate is pure deception and frivolous as the law supersedes this type of conduct. Defense counsel has no defense and has provided nothing to this court nor to this action to corroborate her meaningless assumptions and assertions.)**

57. (AR24-499) **(Exhibit 53)** the APRA request Stephanie Nemeth is trying to mix in still listed the correct officers on the scene. Still listed the correct property that was unlawfully taken from the driveway. The date 1/20/2020 was a mere typo error obviously, and the same response was given then. Further more Complainant never requested anything relating to any events that

occurred on such date other then Jan. 28, 2023 in this matter. Nor does Complainant have any correlation to what Stephanie Nemeth is fraudulently trying to incorporate as a defense to cover up corruption from corrupt officials. No such request exists and this is another amongst many false misrepresentations to this court by Stephanie Nemeth deliberately. To further correct Stephanie Nemeth in her abundance of errors and deceit. In correct order, complainant's request **(Exhibit 53)** submitted March 15, 2024 and response filed June 23, 2024 (AR24-499) has it's own response on it's face. That request was corrected by two more request **(Exhibit 54)** put in on the same day on June 26, 2024 just 3 days later in regards to Jan. 28, 2023 and the BWC/ MVR. In which two different responses on two different dates in regards to **(Exhibit 54)** where given on September 30, 2024 **(Exhibit 47)** and again 9 months later May 27, 2025 **(Exhibit 52)** that contains the same answer by Senior Assistant City Attorney Danielle Weiss. So now provided in this motion it's proven again that Stephanie Nemeth can not lie her way into a defense, as all presumptions are rebutted. Stephanie Nemeth again is dishonest and has compromised the credibility of her last and only defense shown and proven.

58. Attorney Nemeth's explanation is a fabricated cover-up designed to conceal the City's deliberate withholding and destruction of evidence. This conduct shall not be accepted nor shall Stephanie Nemeth trample over the Constitution of the United States of America. Stephanie Nemeth shall be held to the same standards as criminals engaging in criminal activity as she is.

59. This fraudulent explanation by Stephanie Nemeth has been knowingly and willingly presented to the Court and is now on record, which further constitutes more fraud upon the Court under Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238 (1944).

VII. THE INDIVIDUAL DEFENDANTS ACTED WITHOUT AUTHORITY AND WITHOUT A WARRANT

60. The BWC footage conclusively demonstrates that no Defendant had a warrant to enter onto the immediate area surrounding the home. Which also means the curtilage/driveway to seize Complainant's vehicle.

61. Cremeans admitted on the phone that "the vehicle is NOT stolen itself."

62. Cremeans admitted that he was "just driving by" and "knew the plate was expired or whatever" and decided to "flip around and run it"

63. Overton admitted: "expired, stolen" and endorsed Cremeans' actions by stating: "I'M WITH YOU ALL THE WAY." So all the way Zachary Overton shall be held accountable in this action as well.

64. Ingles admitted: "I don't know who's car it is" but ordered the tow anyway. Ingles refused and failed to thoroughly review the documents presented on the scene. His body cam shows his negligence and failure to uphold the public trust and police with compassion.

65. No exigent circumstances existed. No warrant was obtained. The seizure was unconstitutional under Collins v. Virginia, 138 S. Ct. 1663 (2018), Florida v. Jardines, 569 U.S. 1 (2013), and Soldal v. Cook County, 506 U.S. 56 (1992).

VIII. LEGAL ARGUMENT

A. Spoliation Under Fed. R. Civ. P. 37(e)

66. Under Fed. R. Civ. P. 37(e), if electronically stored information that should have been preserved is lost because a party failed to take reasonable steps to preserve it, the court may order sanctions.

If the court finds that the party acted with the intent to deprive another party of the information's use in the litigation, the court shall presume that the lost information was unfavorable to that party.

67. The preservation notices issued June 6, 2023 demonstrate that the City was on notice of potential litigation and had a duty to preserve all BWC and MVR footage.

68. The City nonetheless allowed the destruction and alteration of the footage. The different MD5 hashes confirm the footage was altered multiple times.

69. The City's deliberate destruction and alteration of evidence was done with the intent to deprive Complainant of the information's use in this litigation.

70. An adverse inference instruction is warranted under Rule 37(e)(2) is demanded.

B. Fraud Upon the Court

71. Attorney Nemeth's fraudulent explanation of the September 30, 2024 APRA response constitutes fraud upon the Court. She falsely claims the APRA response resulted from a misunderstanding involving Case No. 21-1765 which is a lie. No such request was ever made.

72. Fraud upon the court is a grave offense that strikes at the heart of the judicial process. Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238, 245 (1944).

73. Defendants have made false statements to the Court to justify their destruction of evidence.

C. Violation of Indiana Rules of Professional Conduct

74. Indiana Rule of Professional Conduct 3.3(a)(1) prohibits a lawyer from knowingly making a false statement of fact to a tribunal.

75. Indiana Rule of Professional Conduct 3.4(a) prohibits a lawyer from unlawfully obstructing another party's access to evidence.

76. Indiana Rule of Professional Conduct 8.4(c) makes it professional misconduct to engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.

77. Attorney Nemeth's conduct violates all of these rules.

D. Qualified Immunity Does Not Apply

78. The unconstitutionality of warrantless entry onto curtilage and trespass followed up with warrantless seizure of a vehicle from curtilage was clearly established by Collins v. Virginia (2018), Florida v. Jardines (2013), and Soldal v. Cook County (1992).

79. No reasonable officer could have believed this seizure was lawful.

80. The officers' conduct demonstrates bad faith and deliberate indifference to Complainant's constitutional rights.

IX. REQUEST FOR RELIEF

WHEREFORE, Complainant respectfully requests that the Court:

A. Order Defendants to produce Officer Zachary Overton's complete, unedited BWC footage within three days;

B. Order Defendants to produce the complete, unedited, original BWC and MVR footage from January 28, 2023, for all officers, including the footage before and after the portions currently provided;

C. Issue an adverse inference instruction under Rule 37(e)(2) that the destroyed or withheld footage would have shown:

i. Dakota Cremeans had no probable cause ;

ii. Defendants entered the curtilage without a warrant;

iii. Defendants seized the vehicle without a warrant;

iv. No exigent circumstances ever existed;

v. Defendants acted with intent to Deprive Complainant of his constitutional rights;

D. Find that Attorney Stephanie L. Nemeth has committed fraud upon the Court and impose sanctions under the Court's inherent authority;

E. Refer Attorney Stephanie L. Nemeth to the Indiana Supreme Court Disciplinary Commission for investigation of violations of Indiana Rules of Professional Conduct 3.3(a)(1), 3.4(a), and 8.4(c);

F. Refer the individual Defendants for investigation for perjury and obstruction of justice;

G. Award Complainant his reasonable expenses incurred in bringing this motion, including postage, copying, and costs, under Rule 37(a)(5)(A);

H. Grant such other and further relief as the Court deems just and proper.

X. CERTIFICATION OF GOOD-FAITH CONFERRAL

Complainant certifies that he has made multiple good-faith attempts to obtain this evidence, including four separate requests. The newly discovered evidence reveals Defendants' fraud and obstruction. No further conferral would be productive.






Sincerely,

leonard a. mckenzie

By **leonard a. mckenzie III**
**Without Prejudice**
**VOID WHERE PROHIBITED BY LAW**
In Care of postal service address:
802 E.Bowman St South Bend, Indiana]
USA without USDC
Email: 4yooinfo@gmail.com

CERTIFICATE OF SERVICE

I hereby certify that on July 13, 2026, a true and correct copy of the foregoing Emergency Motion for Sanctions, to Compel Production of Missing BWC Footage, for Adverse Inference, and for Referral for Disciplinary Action Based on Newly Discovered Evidence was served upon Defendants' counsel via certified mail, return receipt requested, and via email, addressed as follows:

Stephanie L. Nemeth
Buari Nemeth, LLC
100 E. Wayne Street, Suite 315
South Bend, IN 46601
nemeth@bn-legal.com